Minshall, C. J.
Robert Hill, the plaintiff in error, was, with others, a surety upon certain bonds given by B. F. Stahl as administrator of the estate of Henry Deibert, deceased. Stahl becoming insolvent, suit was brought upon the bonds by the several beneficiaries, who, at the October term, 1881, of the court of common pleas, recovered judgments against him and bis sureties for the several amounts due them, amounting in all to some $1,200. Executions were at once issued, but were returned January 11,1882, without levy, by reason of the commencement of proceedings in error in the district court. The judgments having been affirmed, executions were again issued, April, 1885, whereupon Hill, to avoid the sale of his own property, paid one half of the judgments, $906.03, Waddle, a co-surety, paying the other half.
The lands of Stahl, owned by him at the recovery of the judgments and subject to their liens, were conveyed by him on July 29, 1882, to one Thomas O’Day, who executed a mortgage on them to secure the notes given to Stahl for the purchase-money. The mortgage was duly recorded at the time. Afterwards Stahl sold and transferred the notes and mortgage to one Hopkins, who sold and transferred them to Julia King. Julia King having died, suit was brought by her administrator in 1886 to foreclose the mortgage. To this suit Hill was made a party; and answered, setting up by way of cross-petition, the recovery of the judgments against him' as before stated in 1881, the payment made by him on the judgments in April, 1885, and claiming the right to be subrogated to the liens of the judgments so paid as against the mortgage *80 held by the plaintiffs’ decedent. The case was tried in the circuit court on appeal, which found that, as a matter of fact King was the surety of Stahl on the bond, but that he had not been certified as such in the record of the judgments, and dismissed his answer and cross-petition.
The only question in the case is, whether the omission of the fact of his suretyship in the record of the judgment, deprives Hill of the right to be regarded as subrogated to the place of the judgment creditors, for the amount paid by him upon the judgment against him and his principal. And unless, as seems to be claimed, the right of the surety on payment of the judgment to the place and remedies of the creditor, is, by the provisions of § 5836, Revised Statutes, made to depend upon his being certified as such in the record of the judgment, there can be no doubt that, according to the settled rules of equity and the decisions of this court, it does not.
The rule is that so soon as the surety pays the debt of his principal there arises in his favor an equity to be subrogated to all the rights, remedies and securities of the creditor, and has the right to enforce them against the principal for the purpose of his indemnification. Whilst payment by the surety discharges the debt and extinguishes all the securities so far as concerns the creditor, such is not its effect as between the principal and the surety and all who stand in the shoes of the former; as to these, it is in the nature of a purchase by the surety from the creditor, and operates as an assignment of the debt and securities to the surety. And, if a question is made whether the acts of the surety have been such as to keep the security on foot, the court, in the absence of evidence to the contrary, will presume that they were done with that intention which is most .for the benefit of the party doing them. Sheldon on Subrogation, § 87 ; 3 Pom. Eq. Juris., §1419 and note 1; Brandt' on Suretyship, §§270, 273; Burge on Suretyship, 348.
The doctrine, in its application to the relation of principal and surety, is so equitable and just, that there seems to be an entire consensus in the views of authors and courts upon *81 the subject. And in no court has it been more fully recognized and applied than in our own. Neilson v. Fry, 16 Ohio St. 552; Dempsey v. Bush, 18 Ohio St. 376; Neal v. Nash, 23 Ohio St. 483.
In Dempsey v. Bush, it is announced in the syllabus that, “ A surety against whom and his principal judgment has been recovered, has the right, in equity, on paying the amount due on the judgment, to be subrogated to the rights of the judgment creditor in the judgment; and this right of the surety will not be defeated by the fact that there was no stipulation therefor by the surety at the time of making the payment, nor by the fact that he was at the time ignorant of the existence of such right.” The case is very much like the present, one. The judgment to which the sureties were subrogated by payments made in 1864 and 1865, was obtained against them and their principal by the executors of Ross in 1859. And, the mortgage, against which they were given priority by subrogation to the rights of the judgment creditor, was executed in 1861; that is after the recovery of the judgment, but before its payment by the sureties. And it is said in the statement of the case, that the payments were made without any agreement between the executors and the sureties, except that they were in full of the judgment ; and without any intent on the part of the sureties either to assert or to abandon any supposed right of subrogation, and without any knowledge on their part of the existence of such right, although intending to assert all their rights in the premises. Whether the sureties had been certified as such in the judgment is not stated; it is probable they were not; but if they were, no prominence was given to the fact in the opinion of the court. The right of the sureties to be subrogated was placed on the ground that they had paid the judgment.
The claim, based upon the language of § 5836, Revised Statutes, that unless the surety is certified as such in the judgment, its payment by him cannot avail to keep it on foot for the purpose of his indemnity, is, we think, a misapprehension of the purpose and object of the section. The pro *82 visions of this section were first introduced into our statutes in 1868, and with some slight modifications have continued in force to this time. A study of its language and history will show, that the object of its enactment was, not to limit or modify any of the existing rights of a surety against his principal, on paying the judgment against both of them, but rather to add to and enlarge those that he had. Before the enactment of this statute the only proceeding the surety had for reviving a dormant judgment to which by reason of payment he was entitled to be subrogated, was by action, as was done in the case of Real v. Rash. But under the provisions of the above section, by taking the precaution to be certified as such in the record of the judgment, the surety may, in his own name, on payment of the judgment, cause it to be revived by a conditional order under the provisions of section 5367, Revised Statutes; and, it would seem, from the generalty of the language employed, he may for his own indemnity keep it alive against the principal by causing an execution to issue ; because the creditor, in whose place he stands, might have done so — the language of the section being, “ shall have all the rights and remedies against the principal debtor that the plaintiff had at the time of such payment.”
These are some of the advantages conferred on the surety by being certified as such in the judgment, and of which he could not have availed himself prior to the adoption of the provisions contained in section 5836, Revised Statutes, without first having obtained the judgment of a court in a proper action, subrogating him to the place of the creditor. It may be regarded as a statutory mode of subrogation, acting upon the facts of a case without the aid of a court; and furnishing to the surety a summary remedy by which he may not only revive the judgment, but keep it alive, on making payment to the creditor. The remedy is cumulative to the rights of the surety, but, upon well settled principles of construction, is not exclusive of others which the law had given him for his indemnity against his principal. Where he has failed to be certified in the judgment, he may, as before, bring an action and cause it to be revived by judgment; and, in any *83 proceeding, may be regarded as subrogated, where, as in Dempsey v. Bush, as also in this case, an actual judgment of subrogation is not required in order to do justice between the parties. That is to say, in suits brought to sell the subject of the lien and distribute the proceeds, the court, being in the exercise of its equitable jurisdiction, considers that as done, which, upon the facts of the case, the party had a right to have done, and distributes the proceeds without any formal judgment of subrogation.
No injustice is done to the holder of the mortgage in this case by keeping the judgments in force for the benefit of the surety. When the mortgage was made and delivered, the judgments of the Deiberts were liens on the land. It was the duty of Stahl to have protected his surety by paying these judgments: but, instead of so doing, he sold the land, took a mortgage to himself for the purchase money, and left the judgments to be discharged by the surety. Hence the mortgage being subsequent in time to the judgments, is in no way impaired by paying to the surety, from the proceeds arising from the sale of the land, the amount due him on the judgments instead of to the creditor. The interest in the land covered by the mortgage remains the same in either case.
Judgment reversed, and judgment for Hill on his cross petition.